**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **EVA ACEVEDO ORTEGA, VERONICA ALEJANDRA LOPEZ GUZMAN, and ERIK DAVID MARTINEZ,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE LISINSKI LAW FIRM, LLC,** an Ohio Limited Liability Company;<br>**ANGELYNE E. LISINSKI,** an individual;<br>**JUAN CHINCHILLA,** an individual; and<br>**REA SINGH,** an individual,<br><br>*Defendants*. | Case No. 2:26-cv-00644-DRC-KAJ<br><br>District Judge Douglas R. Cole<br><br>Magistrate Judge Kimberly A. Jolson |

**DEFENDANT REA SINGH'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Rea Singh ("Ms. Singh"), by and through her undersigned counsel, moves to dismiss with prejudice Count II of the First Amended Class Action Complaint (ECF No. 15, "FAC") filed by Plaintiffs Eva Acevedo Ortega, Veronica Alejandra Lopez Guzman, and Erik David Martinez (collectively, "Plaintiffs"). Count II, the only claim asserted against Ms. Singh, fails because the FAC pleads no facts showing that she agreed to join a racketeering conspiracy or knew of any racketeering objective, does not plead the substantive RICO violation that is the conspiracy's alleged object, and pleads no injury proximately caused by any predicate act. Ms. Singh also joins in, and incorporates by reference,

the Motion to Dismiss and Memorandum in Support filed concurrently by Defendants The Lisinski Law Firm, LLC, Angelyne E. Lisinski, and Juan Chinchilla (the "Omnibus Memorandum"), to the extent its arguments bear on Count II. The grounds for this Motion are set forth more fully in the attached Memorandum in Support.

Dated: October 26, 2026

Respectfully submitted,

By: /s/ David J. Butler
David J. Butler
Ohio Bar No. 0068455, Trial Counsel
Taft Law LLP
41 South High Street, Suite 1800
Columbus, OH 43215-6106
614.334.6167
dbutler@taftlaw.com

Michelle A. Freeman (*pro hac vice* forthcoming)
Michigan Bar No. P79790
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
313.234.7100
mfreeman@foley.com

Jason P. Mehta (*pro hac vice* forthcoming)
Florida Bar No. 106110
Heather A. Lee (*pro hac vice* forthcoming)
Florida Bar No. 1011026
Foley & Lardner LLP
100 N. Tampa St., Suite 2700
Tampa, FL 33602-5810
813.225.5424
jmehta@foley.com
hlee@foley.com

Tam C. Wheat (*pro hac vice* forthcoming)
California Bar No. 352916
Foley & Lardner LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
213.972.4500
twheat@foley.com

*Attorneys for Defendant Rea Singh*

# MEMORANDUM OF LAW IN SUPPORT OF REA SINGH'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiffs allege that the Lisinski Law Firm ("LLF") operated an immigration practice through deceptive marketing, client communications, fee collection, and immigration filings. After U.S. Citizenship and Immigration Services ("USCIS") rejected or denied immigration relief sought on their behalf, Plaintiffs sued LLF and several individuals, alleging that those activities were part of a racketeering scheme. But the FAC does not allege that Ms. Singh owned or managed LLF, controlled its business practices, or marketed its services. It does not allege that she solicited or communicated with any Plaintiff, handled any payment, prepared or submitted any immigration filing, communicated with USCIS, or participated in any alleged mailing, wire communication, or telephone calls. The allegations against Ms. Singh come down to a single employment function: training LLF's non-attorney intake staff. Based on that limited role, Plaintiffs seek to hold her liable for the entire alleged racketeering conspiracy.

Plaintiffs' sole claim against Ms. Singh, Count II, alleges that she conspired with her co-Defendants to violate 18 U.S.C. § 1962(c), a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d). But the FAC pleads no facts showing that Ms. Singh entered into that agreement. Instead, it relies on two allegations directed collectively at every Defendant: that they "conspired, combined, and agreed together" and that "[e]ach Defendant explicitly agreed to the overall structure of the racketeering conspiracy." FAC ¶¶ 247–248. Those assertions do not identify when, where, how, or with whom Ms. Singh allegedly reached an agreement, what she agreed to do, or what she knew about the alleged racketeering objective.

The only allegation specific to Ms. Singh does not cure that deficiency. It asserts that she "institutionalized[] and executed" an intake training protocol. *Id.* ¶ 249(2). That allegation

describes an internal employment function, not an agreement to commit or facilitate racketeering. The FAC identifies no communication between Ms. Singh and any alleged co-conspirator, no predicate act in which she participated, no contact between her and any Plaintiff, and no financial interest she held in the alleged scheme. Its separate assertion that she "knew" her training materials were "designed to deceive," *id.* ¶ 53, is equally conclusory. Even taken as true, it alleges knowledge of LLF's intake practice—not knowledge of the social-media broadcasts, sales communications, electronic payments, mailings, immigration filings, or client telephone communications that the FAC attempts to identify as racketeering activity.

Those omissions matter at the pleading stage. A RICO conspiracy claim requires facts showing that Ms. Singh herself agreed to further the alleged racketeering objective. The FAC's collective assertions of agreement and its description of her training role do not show that she did. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990); *Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1040 (N.D. Ohio 2013). The FAC pleads no facts supporting a plausible inference that Ms. Singh knowingly agreed to join a racketeering conspiracy.

Count II also fails because the FAC does not plausibly plead the underlying substantive RICO violation or an injury proximately caused by an alleged predicate act, as explained in the co-Defendants' Motion to Dismiss (the "Omnibus Memorandum"), which Ms. Singh joins. Plaintiffs have already amended their complaint, adding two named Plaintiffs and dozens of allegations, but they left the agreement allegations against Ms. Singh unchanged. Count II should therefore be dismissed with prejudice as to her.

## II. STATEMENT OF FACTS

### A. Ms. Singh Is Alleged to Be an In-House Associate With No Financial Stake in the Firm.

The following allegations are drawn from the FAC and accepted as true solely for purposes of this Motion. LLF is an immigration law practice headquartered in Powell, Ohio. FAC ¶ 35. Ms. Lisinski is alleged to be its "sole owner, managing member, and principal figurehead," and Mr. Chinchilla, her husband, its "Business Manager." *Id.* ¶¶ 41, 46. Ms. Singh is alleged to have held a single, defined position: "in-house associate and ethics/compliance trainer." *Id.* ¶ 50. She is not alleged to have owned any interest in LLF or to have received any commission, revenue share, or other compensation tied to client fees. *See id.* ¶¶ 48–53; *cf. id.* ¶ 98 (alleging commissions paid to non-attorney intake specialists).

### B. The Allegations Against Ms. Singh Describe Only an Internal Intake-Training Function.

The FAC alleges that she "designed and taught" sales staff to use phrases such as "in your attorney's review" and "in the attorney's opinion," *id.* ¶¶ 51, 100, and that she created what Plaintiffs call the "Consultation Charade Protocol," under which sales representatives would leave the consultation room for "ten to fifteen minutes" and return to tell the client that an attorney had reviewed the case. *Id.* ¶¶ 52, 100–101. It asserts that she "knew" the materials "were designed to deceive" and used her position "to conceal this practice from clients, regulators, and the public," but it identifies no regulator, no act of concealment, and no communication by Ms. Singh to anyone outside the firm. *Id.* ¶ 53.

Ms. Singh is not alleged to have participated in the firm's marketing—including the social-media videos described in the FAC—or to have signed an immigration filing, mailed a signature packet, or transmitted a payment. *See id.* ¶¶ 42, 82–96, 108–115, 161, 243. The FAC also does not allege any interaction between Ms. Singh and Ms. Lisinski, Mr. Chinchilla, or any other alleged



305564381v1

participant, including Alexandra Lozano. *See id.* ¶¶ 48–53, 73–79. As pleaded, Ms. Singh's involvement with LLF was confined to training the firm's own staff.

**C. No Named Plaintiff Alleges Any Contact With Ms. Singh.**

Ms. Acevedo Ortega alleges that, at an intake consultation at LLF's Denver office, an unnamed male sales representative left the room and returned to say that her file had been vetted, performing "the hallway-walking sequence as taught by Defendant Singh." *Id.* ¶¶ 147–154. That phrase, together with the passing reference to "the charade protocol" alleged in paragraph 149, is the FAC's only link between Ms. Singh and any named Plaintiff. The FAC does not allege when, where, or how Ms. Singh trained that representative, or that she trained Denver personnel at all. *See id.* ¶¶ 48–53, 148–154.

Ms. Lopez Guzman's and Mr. Martinez's allegations do not involve Ms. Singh at all. Ms. Lopez Guzman came to LLF through a friend's referral, and her intake at LLF's Powell office was conducted by a non-attorney staff member who "never identified herself as an attorney." *Id.* ¶¶ 170–171, 173–174 (Lopez Guzman).[1] The FAC does not allege that anyone performed the "hallway-walking sequence" or claimed that an attorney had reviewed her case. *See id.* ¶¶ 171–174 (Lopez Guzman), 175–178. Mr. Martinez is not alleged to have attended any consultation. *See id.* ¶¶ 171 (Lopez Guzman), 178.

**D. Ms. Singh Is Named Only in Count II, and the Only Agreement Allegations Are Bare Conclusions.**

Count II casts Ms. Singh as a participant in an alleged multi-year, multi-party racketeering conspiracy involving social-media marketing, fee collection, USCIS filings, and a telephone call

[1] The FAC contains two sequences of paragraphs numbered 170 through 174. The first, at pages 37–38, concerns Ms. Acevedo Ortega; the second, at pages 38–39, concerns Ms. Lopez Guzman. Paragraph numbering resumes in a single sequence at paragraph 175. This Motion cites paragraphs in the second sequence as "FAC ¶ __ (Lopez Guzman)."

with a client. *Id.* ¶¶ 243, 247–249. Count I, the substantive RICO claim, is brought only "Against Attorney Lisinski," while Counts III and IV are asserted only against Ms. Lisinski and LLF. *Id.*, Legal Counts and Causes of Action at pp. 58–59, 61–62, 64. The FAC's specific predicate-act allegations likewise make no reference to Ms. Singh. *Id.* ¶¶ 138–144, 243.

The FAC's allegations of agreement consist, in their entirety, of three sentences: that "Defendants, through their executive leadership, corporate ownership, and employment actions, knowingly, willfully, and intentionally conspired, combined, and agreed together with each other, and with upstream co-conspirators Alexandra Lozano [sic], to violate 18 U.S.C. Section 1962(c)"; that "[e]ach Defendant explicitly agreed to the overall structure of the racketeering conspiracy and knew that the success of the multi-million-dollar immigration mill depended entirely upon the coordinated commission of federal wire fraud, mail fraud, and post-fraud witness tampering"; and that "Defendant Rea Singh institutionalized, and executed the deceptive consultation charade protocol to weaponize non-attorney staff." *Id.* ¶¶ 247, 248, 249(2). The FAC thus identifies no facts concerning when, where, how, or with whom Ms. Singh allegedly reached an agreement to join the alleged conspiracy.

## III. <u>LEGAL STANDARD</u>

Dismissal is proper under Fed. R. Civ. P. 12(b)(6) when a complaint "fail[s] to state a claim upon which relief can be granted." To survive dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8 requires that pleadings be sufficient "to give the <u>*individual*</u> Defendants proper notice of what they have allegedly done wrong." *Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *3 (S.D. Ohio

Mar. 13, 2014) (emphasis added). Unsupported group pleading, i.e., "lumping the Defendants together," cannot support a claim. *Id.; see Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (affirming dismissal under Rule 9(b) where the plaintiffs pleaded only "general averments of fraud attributed to 'the defendants'" and, although the complaint "identifie[d] relationships between various of the defendants," it did "not enable a particular defendant to determine with what it is charged"); *see also Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 602, 619 (E.D. Mich. 2015) (recognizing group pleading deficiencies can defeat RICO claims because "each Defendant is entitled to an individualized analysis of his, her, or its own RICO liability," and ordering plaintiffs to cure those deficiencies by producing a defendant-by-defendant chart identifying facts showing that each specific defendant "entered into an agreement to commit a substantive RICO violation," evidence supporting the agreement, and the nature of the agreement, for each defendant alleged to have violated Section 1962(d)).

In ruling on a motion to dismiss, the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. However, this presumption of truth does not extend to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Count II Fails Because the FAC Pleads No Facts Showing That Ms. Singh Agreed to Join a RICO Conspiracy.

To state a RICO conspiracy claim under 18 U.S.C. § 1962(d), Plaintiffs must plead facts showing that each Defendant "objectively manifested an agreement to participate directly or



305564381v1

indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1261 (6th Cir. 1983)) (internal quotation and editing marks omitted). The complaint therefore must plausibly allege "the existence of an agreement to engage in conduct that would amount to a RICO violation." *Craighead*, 899 F.2d at 495. Simply asserting that the defendants "conspired" is not enough. *Id.* (affirming dismissal where plaintiffs pleaded that conclusion but "failed to plead the elements of a conspiracy"). The allegations are also insufficient if the complaint does not identify "when, where, or between whom any alleged illicit agreement was made." *Huff*, 972 F. Supp. 2d at 1040 (citation omitted). Without facts supporting "the existence of an illicit agreement to violate the substantive RICO provision," a § 1962(d) claim fails. *Heinrich*, 668 F.3d at 411 (quoting *Sinito*, 723 F.2d at 1260); *see also Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 423 (6th Cir. 2017) (quoting *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015)).

That agreement need not include a commitment by Ms. Singh personally to commit two predicate acts. *Salinas v. United States*, 522 U.S. 52, 65 (1997). But the FAC must still plead facts showing that she agreed to facilitate conduct that, if completed, would constitute a substantive RICO violation. *Id.* at 65. Although *Salinas* arose in the criminal context, the Sixth Circuit has applied its construction of Section 1962(d) in civil RICO cases. *See Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 890 n.10 (6th Cir. 2000).

*Heinrich* illustrates the type of factual allegations that can establish the required agreement. In *Heinrich*, the Sixth Circuit held that the defendants' agreement "can be inferred from the individual defendants' involvement in the four well-pled predicate acts in which they made false representations to hopeful adoptive couples with the goal of defrauding those couples of money."

668 F.3d at 411. The FAC contains no comparable allegations as to Ms. Singh. It does not allege that she participated in any predicate act, agreed that any predicate act would be committed, or otherwise manifested assent to the alleged scheme.

The FAC's allegations of agreement do not fill that gap. The first sentence alleges that "Defendants, through their executive leadership, corporate ownership, and employment actions, knowingly, willfully, and intentionally conspired, combined, and agreed together with each other, and with upstream co-conspirators Alexandra Lozano [sic], to violate 18 U.S.C. Section 1962(c)." FAC ¶ 247. That is the statutory element restated with adverbs. It identifies no date, place, communication, participant, term, or objective of any agreement involving Ms. Singh. As applied to her, the allegation reduces to "employment actions"—that is, doing her job—which is no basis for inferring an agreement to join a RICO conspiracy.

The second sentence fares no better. It asserts that "[e]ach Defendant explicitly agreed to the overall structure of the racketeering conspiracy and knew that the success of the multi-million-dollar immigration mill depended entirely upon the coordinated commission of federal wire fraud, mail fraud, and post-fraud witness tampering." *Id.* ¶ 248. Merely labeling the agreement "explicit" does not supply the facts necessary to plead a RICO conspiracy. Nor does attributing the same agreement to "each Defendant" satisfy Plaintiffs' obligation to plead facts showing that Ms. Singh herself agreed to join the alleged conspiracy. Instead, the allegation relies on collective pleading where defendant-specific facts are required. *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 829 (S.D. Ohio 2012) (dismissing Section 1962(d) claim that lacked "factual allegations of such an agreement involving the BANA Defendants"). An allegation that applies equally to every Defendant says nothing about any one of them. *See Hoover*, 958 F.2d at 745. That conclusory allegation is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

The third allegation, the only one that names Ms. Singh, asserts that she "institutionalized[] and executed the deceptive consultation charade protocol to weaponize non-attorney staff." FAC ¶ 249(2). Stripped of its rhetoric, that allegation describes a job function: training the firm's intake staff. Executing a training protocol does not show that Ms. Singh agreed to anything, much less that she agreed to racketeering acts by others. Even accepting Plaintiffs' characterization of the alleged protocol as deceptive, the FAC alleges no facts showing that Ms. Singh agreed that it would be used to further predicate crimes or otherwise facilitate a substantive RICO violation. *Salinas* provides Plaintiffs no help. Although a conspirator need not personally commit the predicate acts, a plaintiff must still plead an agreement to facilitate a substantive RICO violation. *Salinas*, 522 U.S. at 65.

The FAC's deficiencies mirror those that defeated the conspiracy claim in *Huff*. There, the complaint did not allege that the individual defendants "ever interacted in any way" with their alleged co-conspirators, much less that they reached the understanding necessary to form a conspiracy. *Huff*, 972 F. Supp. 2d at 1040. The bare assertion that they "devised a scheme" at some unspecified point also failed to connect them to the alleged conspiracy. *Id.* at 1040 n.25. The same is true here. Apart from the conclusory assertion that all Defendants "agreed together with each other," the FAC alleges no communication or interaction between Ms. Singh and Ms. Lisinski, Mr. Chinchilla, or Ms. Lozano. *See* FAC ¶¶ 48–53, 73–79, 247–249; *compare Grubbs*, 807 F.3d at 790, 806 (agreement pleaded through dated meetings and weeks of email and telephone coordination planning the scheme). And the FAC's only factual allegation concerning Ms. Lozano is that, in or around 2021, Ms. Lisinski licensed Ms. Lozano's "operational blueprints, pre-packaged training templates, and case-processing workflows." FAC ¶¶ 73–74. The FAC does not

allege that the commercial transaction involved Ms. Singh, much less allege facts supporting a plausible inference that she agreed with Ms. Lozano or anyone else to join the alleged conspiracy.

Nothing else in the FAC supports an inference that Ms. Singh joined the alleged conspiracy. Although involvement in predicate acts may support an inference of agreement, the FAC attributes no predicate act to her. *United States v. Driver*, 535 F.3d 424, 432–33 (6th Cir. 2008) (inferring the defendant's agreement to the single predicate act he committed, but reversing his RICO conspiracy conviction because the evidence did not show that he agreed that he or anyone else would commit any other charged racketeering act). The FAC's only link between Ms. Singh and any named Plaintiff is the phrase "as taught by Defendant Singh" and a passing reference to the "charade protocol," neither of which alleges any act, communication, or assent by Ms. Singh. FAC ¶¶ 149, 154. The FAC attributes to Ms. Singh no social-media video and no mailing, filing, payment, wire communication, or telephone call involving any Plaintiff. *See id.* ¶¶ 48–53, 82–96, 138–144, 243. Although the wire-fraud allegations refer to "scripted sales representations," the hallway sequence attributed to Ms. Singh allegedly occurred in person. And the FAC does not allege that the attorney-review phrases described in paragraph 51 were used in any wire communication with any Plaintiff. *See id.* ¶¶ 51, 101, 138–144, 147, 150–154, 170 (Lopez Guzman), 243.

Absent any connection between Ms. Singh and a predicate act, Plaintiffs are left to rely on her alleged training of LLF's intake staff as evidence of agreement. But conduct consistent with an employee's assigned duties does not, without more, plausibly show that she agreed to join a racketeering conspiracy. Plaintiffs' conclusory assertion of an agreement cannot fill that factual gap. *See Twombly*, 550 U.S. at 556–57 ("[A] bare assertion of conspiracy will not suffice . . . and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to

show illegality.”). The FAC does not allege that she stood to gain from the alleged scheme; it attributes to her no share of any fee or other financial interest in its success. *See* FAC ¶¶ 48–53, 98. And although Plaintiffs added two named Plaintiffs and dozens of new allegations in the FAC, they added no facts showing that Ms. Singh agreed to join the alleged conspiracy.

In short, the FAC alleges Ms. Singh trained LLF’s intake staff, but pleads no facts showing she agreed to join the alleged racketeering conspiracy. Plaintiffs cannot rely on Ms. Singh’s alleged employment responsibilities in place of facts showing the illicit agreement Section 1962(d) requires. Count II should therefore be dismissed as to Ms. Singh on this ground alone.

**B. Count II Independently Fails Because the FAC Pleads No Facts Showing Ms. Singh Knew of Any Racketeering Objective.**

A Section 1962(d) defendant must know of the scheme she is alleged to have joined. *See Salinas*, 522 U.S. at 65 (defendant “knew about and agreed to facilitate the scheme”). The FAC’s allegations of knowledge fare no better than its allegations of agreement.

Knowledge must be pleaded as to each Defendant. As noted above, group pleading—“lumping the Defendants together”—does not “give the *individual* Defendants proper notice of what they have allegedly done wrong.” *Aaron*, 2014 WL 996471, at *3 (emphasis added). Yet that is all the FAC offers. It alleges that “[e]ach Defendant . . . knew that the success of the multi-million-dollar immigration mill depended entirely upon the coordinated commission of federal wire fraud, mail fraud, and post-fraud witness tampering,” FAC ¶ 248, but does not allege how or when Ms. Singh acquired that knowledge, how it was communicated to her, or how her knowledge differed from that attributed to any other Defendant. A conclusory assertion of knowledge, attributed to every Defendant alike, does not plead what any individual Defendant knew. *See Iqbal*, 556 U.S. at 680–81; *cf. Hoover*, 958 F.2d at 745.

The FAC's only allegation about what Ms. Singh herself knew is paragraph 53, which contends she "knew that the training materials and protocols she developed and enforced were designed to deceive clients" and used her position "to conceal this practice from clients, regulators, and the public." FAC ¶ 53. That assertion is conclusory: it identifies no regulator, no act of concealment, and no communication by Ms. Singh to anyone outside the firm. *See id.* ¶¶ 48–53. *Prater v. Livingston Ave. Child Care, LLC* reinforces the point. In *Prater*, the court declined to infer that the defendants knew their promise to repay a loan was false "simply because they signed a note, and then they failed to pay." No. 2:14-cv-490, 2015 WL 1439322, at *5 (S.D. Ohio Mar. 27, 2015). The court instead treated the allegations that the defendants "knew" their representations were false as "bare conclusions" unsupported by pleaded facts. *Id.* The same defect is present here. Apart from the conclusory assertion in paragraph 53, the FAC alleges only that Ms. Singh served as an "in-house associate and ethics/compliance trainer" and developed an intake training protocol. FAC ¶¶ 50–52.

Paragraph 53 also does not connect Ms. Singh's alleged knowledge to any of the purported predicate acts: wire fraud through social-media broadcasts, sales communications, and electronic payments; mail fraud through the mailing of immigration packets; or witness tampering through telephone communications with clients, including the alleged May 1, 2026 call. *See id.* ¶¶ 51–53, 138–144, 150–154, 243. Although the wire-fraud allegations refer to "scripted sales representations" transmitted through "cellular communications," *id.* ¶ 243(1), the FAC does not allege that Ms. Singh knew her training materials would be used in any wire communication or in connection with any mailing, filing, or telephone call. The training attributed to her concerned in-person consultations. *Id.* ¶¶ 51–52, 101, 153–154. Paragraph 53 therefore alleges, at most,

knowledge of the intake practice she allegedly designed—not knowledge of the racketeering activity underlying Count II.

The FAC cannot rely on Ms. Singh's position at the firm to show that she knew of the alleged racketeering objective. A defendant's "mere association" with an organization alleged to be a RICO enterprise "is not sufficient to prove that he conspired with other . . . members to violate the RICO statute." *Driver*, 535 F.3d at 433. The FAC pleads no other facts showing that Ms. Singh knew of that objective and therefore does not plausibly allege that she knowingly agreed to further it. Count II should be dismissed as to her for this independent reason.

**C. Count II Independently Fails Because the Conduct Plaintiffs Describe Is Not a RICO Violation.**

A RICO conspiracy requires an agreement to pursue an objective that, if achieved, would satisfy the elements of a substantive RICO offense. *Salinas*, 522 U.S. at 65. A Section 1962(d) claim therefore cannot survive when the complaint fails to plead an underlying RICO violation. *Craighead*, 899 F.2d at 495 ("Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts."); *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 186–87 (6th Cir. 2020) ("Because Courser's RICO claim fails, the RICO conspiracy claim fails too."); *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 459 (6th Cir. 2019) (affirming dismissal of § 1962(d) claim because plaintiffs "failed to plausibly allege a violation of § 1962(b) or (c)"); *Am. BioCare*, 702 F. App'x at 423 (affirming dismissal of RICO conspiracy claim where plaintiff failed to plead underlying RICO violation); *AK Steel Corp. v. United Steel Workers of Am.*, No. C-1-00-374, 2002 WL 1624290, at *7 (S.D. Ohio Mar. 30, 2002) ("A conspiracy claim under 18 U.S.C. § 1962(d) cannot survive a motion to dismiss if the pleadings do not also state a substantive RICO claim for which relief may be granted."). Here, the alleged object of the conspiracy is the enterprise and pattern of racketeering described in Count I. If the



305564381v1

FAC does not plausibly plead a violation of Section 1962(c), its Section 1962(d) claim necessarily fails as well.

The co-Defendants' Omnibus Memorandum, which Ms. Singh joins and incorporates, explains why the FAC does not plausibly plead a substantive RICO violation. Ms. Singh does not repeat those arguments here. In summary, the alleged "enterprise" consists of LLF, its owner and personnel, and the contractors, vendors, and licensor with which it did business. The FAC identifies those participants but does not plead facts showing an association that functioned as a continuing unit distinct from the firm's ordinary operations. *See* FAC ¶ 237; *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781–82 (6th Cir. 2000) (affirming dismissal where complaint "essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities," without facts suggesting the entities' conduct was "coordinated" such that they functioned as a "continuing unit").

The FAC also does not plead the alleged mail- and wire-fraud predicates with the particularity Rule 9(b) requires. *See Am. BioCare*, 702 F. App'x at 421–23 (affirming dismissal where complaint failed to identify the date, content, medium, or speaker of any alleged misrepresentation and did not tie any of them "to a single occurrence of fraud"); *see also Craighead*, 899 F.2d at 494–95 (affirming dismissal of RICO claims where the complaint "fail[ed] to set forth any instance of mail fraud, securities fraud, or any other fraud, with any particularity"). The FAC's catalog of social-media videos does not tie any quoted video to any Plaintiff, alleging only that Plaintiffs were "exposed to and relied upon representations of this kind." FAC ¶¶ 85–96. The one video Ms. Acevedo Ortega allegedly viewed, on or about August 20, 2024, is characterized only generally, without identifying any statement it contained. *Id.* ¶ 146.

Finally, as shown below and in the co-Defendants' Omnibus Memorandum, the FAC does not plead that any adequately alleged predicate act proximately caused Plaintiffs' injuries. *See infra* § IV.D; Omnibus Mem. § IV.A.1.iv. Because the FAC does not plausibly plead the substantive RICO violation that forms the object of the alleged conspiracy, Count II fails as to every Defendant, including Ms. Singh.

**D. The FAC Pleads No Injury Caused by Racketeering, and Ms. Singh's Alleged Conduct Cannot Supply One.**

Ms. Singh joins the co-Defendants' showing that the FAC pleads no injury to "business or property" proximately caused "by reason of" any predicate act. Omnibus Mem. § IV.A.1.iv; 18 U.S.C. § 1964(c). That failure defeats Count II as to every Defendant. As to Ms. Singh, the claim fails for the additional reason that the only conduct attributed to her is not independently wrongful under RICO (or otherwise) and therefore cannot support recovery under Section 1964(c).

At common law, a civil conspiracy claim was "not an independent cause of action, but was only the mechanism for subjecting co-conspirators to liability when one of their member[s] committed a tortious act." *Beck v. Prupis*, 529 U.S. 494, 503 (2000). When Congress created a civil remedy for injury "by reason of" a RICO conspiracy, it adopted that principle. *Id.* at 504. A plaintiff suing under Section 1964(c) for a violation of Section 1962(d) therefore must allege an injury caused by an act of racketeering or an act otherwise wrongful under RICO. *Id.* at 505. It is not enough that the act merely furthered the alleged conspiracy. *Id.* at 505; *see also Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154 (6th Cir. 1990) ("[I]f a plaintiff fails to demonstrate that a causal nexus exists between his injury and the predicate acts (the criminal RICO violations), he has no standing to sue under § 1964(c)."). The alleged racketeering act also must proximately cause the claimed injury. *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265–68, 276 (1992) (plaintiff had no right to sue under Section 1964(c) "because the alleged conspiracy to manipulate



305564381v1

did not proximately cause the injury claimed"); *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013) (RICO plaintiff "must demonstrate both but-for causation and proximate causation"). These requirements apply at the pleading stage. *See Aces High Coal Sales*, 768 F. App'x at 453 (on review of Rule 12(b)(6) dismissal, explaining that "'by reason of' means the injury must be proximately caused by the RICO violation").

This rule disposes of Count II as to Ms. Singh. The FAC does not allege that Ms. Singh ever met, spoke with, or communicated with any Plaintiff. Its allegations against her are confined to designing and teaching intake scripts and a consultation protocol that non-attorney sales staff later used. FAC ¶¶ 50–53, 100–101, 154, 249. Training staff is not mail fraud, wire fraud, or witness tampering, the only predicates the FAC attempts to plead. *Id.* ¶ 243. Like the termination in *Beck*, that conduct is not independently wrongful under RICO and cannot be the injurious act on which a Section 1964(c) claim rests. 529 U.S. at 498–99, 505–06. Plaintiffs' claim against Ms. Singh therefore depends entirely on injury proximately caused by purported predicate acts allegedly committed by others. But, as the Omnibus Memorandum explains, the FAC does not plausibly allege any such predicate act caused Plaintiffs' injuries. Omnibus Mem. § IV.A.1.iv. Because Ms. Singh's own alleged conduct is not independently wrongful under RICO, and the FAC pleads no injury caused by a predicate act committed by anyone else, Count II should be dismissed as to her.

## V. <u>CONCLUSION</u>

Count II seeks to impose RICO conspiracy liability on an in-house associate based solely on her alleged role in training the firm's intake staff. But the FAC alleges no facts showing that Ms. Singh agreed to join a racketeering conspiracy or knew of its racketeering objective. Instead, it relies on two group-pleaded assertions that an agreement existed, neither supported by facts specific to Ms. Singh. Count II also fails for the independent reasons set forth above and in the

co-Defendants' Omnibus Memorandum. Plaintiffs have already amended their complaint once without curing these deficiencies, and further amendment would be futile. Ms. Singh therefore respectfully requests that the Court dismiss Count II as to her with prejudice and grant such other relief as it deems just and proper.

Dated: October 26, 2026

Respectfully submitted,

By: /s/ David J. Butler
David J. Butler
Ohio Bar No. 0068455, Trial Counsel
Taft Law LLP
41 South High Street, Suite 1800
Columbus, OH 43215-6106
614.334.6167
dbutler@taftlaw.com

Michelle A. Freeman
(*pro hac vice* forthcoming)
Michigan Bar No. P79790
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
313.234.7100
mfreeman@foley.com

Jason P. Mehta (*pro hac vice* forthcoming)
Florida Bar No. 106110
Heather A. Lee (*pro hac vice* forthcoming)
Florida Bar No. 1011026
Foley & Lardner LLP
100 N. Tampa St., Suite 2700
Tampa, FL 33602-5810
813.225.5424
jmehta@foley.com
hlee@foley.com

Tam C. Wheat (*pro hac vice* forthcoming)
California Bar No. 352916
Foley & Lardner LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
213.972.4500
twheat@foley.com

*Attorneys for Defendant Rea Singh*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I caused the foregoing document to be filed using the Court's CM/ECF System, which caused it to be served upon those parties registered in the system to electronically receive such service.

/s/ David J. Butler
David J. Butler